## The G., C. & S. F. R'y Co. v. Wm. J. Jones.

(Case No. 2026.)

1. PAROL EVIDENCE.— The rule is, when the written contract is not plainly and intelligently stated, that parol evidence may be resorted to, not to vary or contradict that which is written, but to explain it, provided the explanation does not result in making a new contract. Though the explanation generally consists of facts surrounding the making of the written contract, yet even the language used by the parties pending negotiations may be used to explain doubtful phraseology of the written instrument.

2. FACT CASE.— See statement and opinion for facts under which it was held that the plaintiff was entitled to recover damages for the removal of a shell bank which protected his land from overflow from the tides.

APPEAL from Galveston. Tried below before the Hon. Wm. H. Stewart.

Appellee, as plaintiff below, and his wife, Elizabeth Jones, filed an amended petition April 23, 1883, alleging in substance that they owned as a homestead a certain tract of land (describing same) on Galveston Bay near Virginia Point. That on June 27, 1882, defendant entered on said premises with a large number of hands, steam-engines and cars and tools, tore up the earth, soil and shell banks, the road and beach, built a railroad across the same and carried away large quantities of shell, all against their consent, to their damage $20,000; they also claimed $5,000 damages for inconvenience on account of said railroad running near their dwelling. That the building of the railroad required them to construct a fence to protect their farm, to their damage $150. They also claimed $5,000 damages for destruction of shell road on their beach which protected them from bay water, and afforded a road from their place to Virginia Point, and also $10,000 exemplary damages. Defendants answered, April 28, 1883, by general and special demurrers and general denial, and for special answer alleged that one Solomon Parr owned a tract of land with shell and gravel banks, about two miles from Virginia Point, on Galveston Bay. That it had an agreement with Parr to take and remove all shell and gravel and ballast therefrom for the period of ten years; that the land of plaintiff lay between Virginia Point and the land of Parr, and that the terms of defendant's agreement and contract with Parr were known to plaintiff; that in order to enable it to reach the Parr shell banks, defendant, on June 27, 1882, made a written contract with plaintiff, same being signed by him and defendant's agent, whereby, in consideration of $500 paid to him, he conceded to defendant the right of way for its railroad across his land to reach a shell bank at the mouth of Campbell's Bayou, purchased of Solomon Parr, and agreed

to sell defendant all of his shell along the shore which could be spared with safety from the embankment for fifty cents per car-load, and not to dispose of same to any other party within twelve months from date, or that, in case of any emergency preventing removal of the shell, he would extend the time to 1st day of September following that day in June, 1882. That all acts of defendant, in and upon said premises, were done under that contract and were authorized by the same. Appellee, on March 1, 1883, filed a supplemental petition with general and special demurrers to the answer, alleging that the contract referred to in defendant's answer was made in good faith by him with defendant's agent, F. P. Killeen, who procured it to be executed by J. H. Crowley, and alleging that the contract was distinctly understood to be, and was intended by the parties as, a contract for twelve months, unless in case of extraordinary emergency, when it was to continue for three months longer, which emergency did not occur. Defendant filed a supplemental answer March 1, 1883, demurring to the supplemental petition, and renewing the demurrers to the original petition.

The court sustained the exception to the improper joinder of Mrs. Elizabeth Jones as a party plaintiff, to which plaintiff excepted, and overruled all of the other of defendant's exceptions and demurrers, to which defendant excepted; and overruled all of plaintiff's demurrers and exceptions, to which plaintiff excepted. Verdict and judgment for plaintiff for $571.60.

The grant of the right of way was as follows:

" STATE OF TEXAS,         }
" County of Galveston.    }

" For the consideration of five hundred dollars this day paid me by the Gulf, Colorado & Santa Fe Railroad Company, I hereby concede to them the right of way across my land at Virginia Point to reach a shell bank at the mouth of Campbell's Bayou, purchased of Solomon Parr, and after they have exhausted said shell bank, I hereby agree to sell them all the shell along the shore from the bridge of said company to the shell bank of Sol. Parr that can be spared from same in safety to the embankment for the sum of fifty cents per car-load, and not to dispose of the same to any other party within the term of twelve months from date; and should any extraordinary emergency occur to prevent removal of same I will extend time to 1st day of September following this day in June, 1882.                                    WM. J. JONES.

" Correct:
    "J. H. CROWLEY.
    " *June 27, 1881.*"

The plaintiff's land at Virginia Point commences at the end of the railroad bridge and runs eastward along the bay about a mile; then is reached the land of Walter C. Jones, which extends to Parr's, about a mile further east.

The temporary railroad track built by the defendant started at the depot, and ran about five hundred yards on the prairie; then it deflected to the beach, along which it ran till it passed the plaintiff's dwelling some distance. The dwelling is about a mile from the bridge, and stands back from the beach about two hundred yards.

One of the grounds of the plaintiff's complaint was that the defendant cut entirely through the shell bank in a number of places, so as to let in the sea water on his land, and flooding the grounds about his dwelling. It appeared that the plaintiff had been absent from home during a considerable part of the time while the work was going on in front of his land.

About the last of June, 1883, the defendant removed the track from the beach and the front portion of plaintiff's land and placed it some distance in the rear of his residence and improvements.

The character of the assignments of error is apparent from the opinion.

*Ballinger, Mott & Terry*, for appellant, that a written contract cannot be varied by parol unless fraud, accident or mistake is pleaded, cited: Self v. King, 28 Tex., 552; Kelly v. Kelly, 12 Tex., 452; Hughes v. Sandal, 25 Tex., 162; Wright v. Hays, 34 Tex., 253; D. S. M. Co. v. Stone, 131 Mass., 384; Bigelow v. Collamore, 5 Cush., 226.

That when a written contract is silent as to time for its performance, parol evidence fixing a time cannot be admitted, citing: Self v. King, 28 Tex., 552; Bedwell v. Thompson, 25 Tex. Sup., 245; Smith v. Garrett, 29 Tex., 48; Hunt v. White, 24 Tex., 643; Donley v. Bush, 44 Tex., 1; Bigham v. Talbot, 51 Tex., 450.

That conversations before its execution are not admissible, they cited: Bigelow v. Collamore, 5 Cush., 226; Davis S. M. Co. v. Stone, 131 Mass., 384; Greenl. Ev., vol. 1, §§ 277, 275; Gould v. Norfolk L. Co., 9 Cush., 338; Harrison v. Kirk, 38 N. Y. Sup. Reps., 396; and cases before cited.

*W. B. Denson* and *M. E. Kleberg*, for appellee.

DELANY, J. COM. APP.— The ninth, tenth, eleventh and twelfth assignments of error present the action of the court in overruling defendant's exceptions to the petition and supplemental petition of plaintiff. Our opinion is that the court did not err in these rulings.

The pleadings of the plaintiff set forth with sufficient clearness the grounds of his complaint.

The first and second assignments will be considered together. The negotiation for the right of way and for the sale of the shell took place between the plaintiff and Killeen, the agent of the defendant.

On the trial the plaintiff testified that he distinctly told Killeen, pending that negotiation, that the company could have the right of way for one year only; that he was already forming plans concerning the property which would be inconsistent with the company's use of the right of way for more than twelve, or, at the furthest, fifteen months. To this the defendant objected on the ground that it was a violation of the rule which prohibits the resort to parol evidence to vary or contradict a written contract.

This rule is enforced upon the theory that the " contract itself is plainly and intelligibly stated in the language of the parties, and is the best evidence of the intent and meaning of those who are to be bound by the contract." 1 Greenl. Ev., 13th ed., 276.

But it often happens that the contract is not "plainly and intelligibly stated" in the writing. In such cases parol evidence is admissible, not to contradict or vary, but to explain; provided the explanation does not result in making a new contract. And, although this explanatory evidence generally consists of the facts and circumstances surrounding the parties at the time, yet even their language used in the negotiation may be proven to explain doubtful phraseology in the written contract. See 1 Greenl. Ev., sec. 282, and cases cited in note 2, 13th ed; also, 2 Parsons, Con., 560–63. However, it is not absolutely necessary to determine whether the admission of the evidence was error or not. If it was error, it was abstract error and did not harm the defendant. Nor need we determine whether the court correctly construed the contract as to the duration of the defendant's right of way, for the reason that the contract and its interpretation are only incidentally brought in issue in the case. The suit is not brought upon the contract, but to recover damages for injuries to the plaintiff's property by the defendant while in possession of the right of way under the contract. It is not so important, therefore, to ascertain how long the defendant might remain in possession, as to determine what it might do, and what it actually did while in possession under the contract. By its terms the defendant might take "all the shell along the shore from the bridge of said company to the shell bank of Sol. Parr that can be spared from same in safety to the embankment."

The evidence shows that the shell embankment along the shore was from twenty to fifty feet in width, and from three to five feet high; and that it was a complete protection against the ordinary encroachments of the tide. In fact it is shown that the land behind this levee had been overflowed from the bay only twice since the year 1854 — viz.: in 1867 and again in 1875.

About two hundred yards behind this levee stood the plaintiff's residence, surrounded by all the appurtenances of a home. Of course the shell bank in his front was a matter of vital importance to him; and it must have been understood by the defendant that the shell was to be so taken as not to cut through or seriously impair the embankment. The plaintiff charges that the employees of the defendant cut through this levee in a number of places in front of his dwelling and elsewhere, so as to let the water in upon his premises at every rise of the tide. These allegations are fully sustained by the plaintiff's evidence; and are not entirely denied by the witnesses for the defendant.

Indeed, by stating that they did not cut through the levee in many places, they admit that they did cut through it in some places.

From the testimony in the record there can hardly be a doubt that the destruction of this embankment rendered the removal of the railroad track unavoidable; for as soon as the levee was removed the track was swept away with every rise of the tide. Repairing and rebuilding the road became a daily business, and still it could not be kept in condition for use; until, by an arrangement with the plaintiff, it was taken up and placed on higher ground, far in the rear of his dwelling. But all the time that the tide was sweeping away the track of the defendant, it was devastating the homestead of the plaintiff; and the removal of this track did nothing to relieve him from the overflow. We have no doubt that the plaintiff ought to recover damages for the injuries thus inflicted upon him.

The thirteenth assignment is as follows: "The damages allowed by the jury as actual damages to the plaintiff's premises are grossly excessive, and against the evidence." This subject is very forcibly presented by counsel, and we have considered it attentively; but we cannot quite agree with them, and therefore we recommend that the judgment be affirmed.

AFFIRMED.

[Opinion adopted March 20, 1885.]